[Civ. No. 7273.  First Appellate District, Division Two.—February 13, 1930.]

F. W. JONAS, Respondent, v. AMERICAN GRINDER MANUFACTURING COMPANY (a Corporation) et al., Appellants.

Arthur A. Mueller, J. B. Yakey and Walker R. Flint for Appellants.

R. M. Wiley and Lyle Pendegast for Respondent.

STURTEVANT, J.—From a judgment in favor of the plaintiff for moneys due, the defendants have appealed and have brought up a typewritten record. The names of the defendants are but different names for one entity which will hereinafter be designated as the defendant.

Commencing in 1920, F. W. and C. N. Jonas, copartners, were the agents on this coast of the defendant. The latter is a corporation and was engaged in manufacturing at Milwaukee, Wisconsin. Acting on the request of the copartners,

the defendant commenced the manufacture of wrenches. The copartners represented the defendant on this coast in the sale of wrenches and other products manufactured by the defendant. As early as 1920, for the purpose of protecting itself against damage suits in the manufacture of wrenches, the defendant caused certain covenants to be inserted in one of its contracts with the copartners. Toward the end of the year 1924 the relations between the parties were terminated by the defendant. Thereupon C. N. Jonas entered into a contract of employment with the defendant, but F. W. Jonas completely severed his relations with the defendant, dissolved the partnership and commenced to liquidate its affairs. Later he commenced this action.

The plaintiff claimed the amount due on a promissory note which was given for the principal sum of $12,000, and he claimed a balance due on an account for commissions earned. The defendant controverted those items and claimed there was owing to it $12,000, the purchase price of 120 shares of its corporate stock alleged to have been sold and delivered. It also claimed a sum slightly less than $12,000 alleged to be due under a covenant of the contract of agency.

One of the claims set forth by the defendant in this litigation was for costs and expenses of litigation. The plaintiff replies that the litigation in question was not for the infringement of a patent and therefore that it did not come within the purview of the plaintiff's contract. He further contends that the original contract of 1920 was superseded by a contract entered into in 1924. In this connection the plaintiff sets forth a certain covenant on the part of the copartners to pay a part of the costs of the litigation, but that said payments were to be deducted from commissions earned by the copartners. Continuing, the plaintiff contends that the defendant waived its right to deduct the payment from the commissions which were earned during the life of the contract and furthermore that the defendant discharged the copartners as agents and rendered it impossible for the payments to be made out of commissions thereafter to be earned. The trial court made findings in favor of the copartners on these matters and there is evidence in the record supporting the findings. The very most that can be said is that there is a conflict in the evidence, but it was for the trial court to determine conflicts.

■ At one time during the transactions entered into by the parties the copartners agreed to buy from the defendant seventy shares of the defendant's capital stock and agreed to pay therefor $12,000. The plaintiff contends that the copartners demanded delivery of the stock, but that it was never delivered. The defendant, on the other hand, contends that the stock was delivered to C. N. Jonas. The plaintiff replies that, at the time of the purported delivery to C. N. Jonas, the latter had ceased to be a partner of the plaintiff, that he was not the plaintiff's agent, and that his act was wholly unauthorized. Going further, the plaintiff sets forth that at the time of the purported delivery to C. N. Jonas the latter was one of the employees of the defendant. In this same connection it is clear that at the time of the alleged purchase by the copartners of stock in the defendant corporation the copartners held the promissory note of the defendant corporation in the sum of $12,000. The stock was to be taken in liquidation of that note. There was a side agreement that the corporation would, on demand, within a stated time take back seventy shares and pay the copartners $7,000. The plaintiff quotes the record, showing that the copartners made a demand on the defendant to comply with these provisions of its contract and that the defendant neglected to do so. The trial court made findings against the defendant on all of these contentions and there is an abundance of evidence in the record to support each finding. If the defendant was making a claim in good faith that it had sold the copartners stock in the sum of $12,000, we would expect they would have tendered the certificates at least at the time of the trial. But we find nothing in the nature of a tender by the defendant at that time or at any other time.

■ Addressing itself to the facts last mentioned, the defendant claims that in effect the plaintiff is claiming a rescission by the copartners and that the facts do not constitute a rescission because the copartners did not act promptly and they did not offer to restore. In reply the plaintiff asserts that under the facts the corporate stock was never delivered and that no offer to restore was necessary as there was nothing to restore. (*San Diego Const. Co. v. Mannix*, 175 Cal. 548, 558 [166 Pac. 325].) The reply is entirely sufficient. As stated above, the defendant claimed

the certificates of capital stock were delivered to the plaintiff by handing them to C. N. Jonas, but the plaintiff claimed that at the time of the purported delivery C. N. Jonas was no longer a partner because the partnership had been dissolved. ■ In this connection the defendant asserts that if the copartnership was dissolved the defendant had no notice thereof. This statement of the defendant the plaintiff controverts and furthermore he claims that finding number ten finds the facts in favor of the plaintiff and against the defendant. In its reply brief the defendant claimed that there was no evidence on the subject. In this behalf we think that the defendant's claim is overstated. One cannot read the exhibits and the testimony of F. W. Jonas without reaching the conclusion that there was evidence before the trial court which justified it in making the finding.

■ The defendant asserts that the liquidation of the copartnership was never committed by the consent of the two partners to this plaintiff. In this connection it quotes the testimony of C. N. Jonas as contained in his deposition.

The statements of that witness are silent on the subject. If we turn to the testimony given by F. W. Jonas the matter is entirely cleared up and there is nothing in the point.

■ On the eighteenth day of November, 1924, the contract between the parties was canceled by mutual consent, the said cancellation to take effect as of October 11, 1924. Immediately thereafter C. N. Jonas became and continued to be an employee of the defendant. From the eighteenth day of November, 1924, the plaintiff commenced to act and did act in liquidation of the partnership affairs. Nevertheless, on the sixteenth day of February, 1926, C. N. Jonas assumed to act in behalf of C. N. and F. W. Jonas and entered into an accord and satisfaction with the defendant. The defendant pleaded the act as a defense. The trial court found the facts against the defendant. The evidence supports those findings and it is not even conflicting.

In presenting its case the defendant took the position that it owed the plaintiff nothing and that the plaintiff owed the defendant $11,620.42, one-half of the costs of the litigation hereinabove mentioned and referred to, and which litigation was brought against the defendant by the Walden-Worcester Company of Worcester, Massachusetts. This

claim as an entity is not supported by any evidence. Under the clear terms of the written instruments the copartners covenanted to pay out of commissions not more than $500 per month on that claim. Those payments were to commence with the month of May, 1924. The contract was terminated October 11, 1924. Six installments only ever matured, that is $3,000. From the latter sum $100 must be deducted as paid. The maximum amount of the claim of the defendant on this item was, therefore, $2,900 and no more. It was this amount which the court held the defendant waived.

■ The promissory note hereinabove mentioned was dated June 3, 1923. By its terms it carried interest at the rate of seven per cent per annum. The trial court ordered judgment in favor of the plaintiff for interest at seven per cent per annum from the seventh day of January, 1924. The defendant calls attention to an executory agreement of February 2, 1924, that the note was to be surrendered in exchange for stock and that said executory agreement was not terminated until the notice of rescission which was given February 18, 1926, and thereupon the defendant bases the assertion that it should not have been charged with interest from February 2, 1924, the date the executory agreement was made, until the date of the rescission. It does not favor us with any authorities supporting such a contention. We know of none.

■ The defendant claims that the action should have been brought in the name of the copartnership. No demurrer was interposed. In its answer the defendant did not plead any such facts as a defense, therefore the point has been waived. (*Williams* v. *Southern Pac. R. R. Co.,* 110 Cal. 457 [42 Pac. 974].)

Other points are made by the defendant, but no authorities are cited. Moreover, no part of the record is quoted. Under these circumstances we do not feel ourselves called upon to go into the record any further.

We find no error in the record. The judgment is affirmed.

Nourse, Acting P. J., and Dooling, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 15, 1930.